ORIGINAL

FILED
JAN 1 1 2008
U.S. COURT OF FEDERAL CLAIMS

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

MARK S. ZAID, P.C. *
MARK S. ZAID, ESQ. *
1250 Connecticut Avenue, N.W. *
Suite 200 *
Washington, D.C. 20036 *
*
Plaintiffs * Civil Action No. 08- 08-20 C
*
v. *
*
UNITED STATES OF AMERICA *
*
Defendant *
* * * * * * * * * * * *

**COMPLAINT**

This is an action to recover just compensation under the Fifth Amendment of the U.S. Constitution for the taking of property by the defendant United States of America from plaintiffs Mark S. Zaid, P.C., which acted through managing partner, Mark S. Zaid, Esq., following the completion of services rendered as a result of legal representation provided on behalf of Barbara and Eugene Makuch.

**JURISDICTION**

1. This Court has jurisdiction over this action and the defendant pursuant to 28 U.S.C. § 1491.

**VENUE**

2. Venue is appropriate under 28 U.S.C. § 1491.

**PARTIES**

3. Plaintiffs Mark S. Zaid, P.C., is a Washington, D.C. corporation, and Mark S. Zaid, Esq., is the managing attorney (collectively referred to as ("Zaid")). Mr. Zaid is licensed to practice law in the District of Columbia, New York, Connecticut and multiple federal courts. His principal place of business is in the District of Columbia.

4. United States Government is the defendant in this action having responsibility for the actions and activities that led to the taking of property of the plaintiffs.

## INTERESTED NON-PARTIES

5. Barbara and Eugene Makuch were, at all times relevant to this Complaint, clients of the plaintiffs and reside in Erie County, New York.

## FACTUAL BACKGROUND

6. Mr. Zaid was retained by the Makuchs in or around June 1998, specifically to initiate efforts on their behalf to obtain compensation from the United States Government for recognition of the services they collectively performed as undercover agents for the Federal Bureau of Investigation ("FBI") during the approximate period 1971-1992. Prior to Mr. Zaid's retention, the Makuchs had been trying unsuccessfully for years to obtain compensation.

7. Mr. Zaid has been practicing law since 1992, and has built an international reputation of pursuing atypical and extremely difficult claims against governments, foreign and domestic. He is a frequent commentator in print, television and radio on issues relating to national security, intelligence and government accountability. During his fourteen years in Washington, D.C., Mr. Zaid has built significant contacts within the media and the United States Government, including both the House of Representatives and the Senate. He has testified nine times before the U.S. Congress, often briefs Congressional representatives and their staff, and routinely assists in the drafting of legislation. In addition to his practice of law, Mr. Zaid has served since 1998 as the Executive Director of The James Madison Project, a non-profit corporation that educates the public on matters of secrecy, national security, and intelligence.

8. Following a review of the Makuchs' circumstances, one of Mr. Zaid's recommendations was to pursue private relief legislation (also called a "private bill") in order to obtain the sought-after compensation. Mr. Zaid possesses unique experience in

private relief legislation having previously engaged in such efforts on behalf of prior clients. In fact, upon information and belief, at the time Mr. Zaid was retained by the Makuchs (and perhaps to this day) he successfully facilitated the last hearing held before the House Judiciary Subcommittee on Immigration and Claims in 1994 concerning a private relief bill. In pursuit of the Makuchs' private bill effort, Mr. Zaid was routinely and regularly in contact with representatives of the FBI, Department of Justice, the U.S. House of Representatives, U.S. Senate and the media to promote his clients' cause. These contacts included numerous personal meetings, telephone conversations, e-mail, facsimile and letter communications. Additionally, Mr. Zaid frequently communicated with the Makuchs – oftentimes several times on the same day – during 1998-2002, regarding proposed strategy on how best to achieve the intended objective of passage of the legislation.

9. By e-mail dated December 8, 1999, Barbara Makuch, at all times on behalf of herself and her husband, informed Mr. Zaid that although she had not sent him an executed retainer payment she noted that "I believe you have done a great deal to help me, but when I discussed this originally with you, you agreed to take it on without a retainer, but with the understanding that if you won, you would agree to take a third. I have those papers somewhere. I appreciate all you have done, so don't think that I am giving you a tough time. I am not in the market for revenge but for fairness." On August 23, 2000, Barbara Makuch again confirmed via e-mail that if Mr. Zaid was successful in his efforts to obtain compensation for the Makuchs "then the 1/3 agreement holds, and I would be happy to see you on the receiving end of that." Then, as the time approached for the private bills to be introduced into the House of Representatives, on September 22, 2000, Barbara Makuch reiterated through e-mail that "We also have to take into account your third. Either they pay it outright or it comes out of our 2.? million, so we need to factor that in." Later that same day, Barbara Makuch assured Mr. Zaid in an

e-mail that she believed he "deserve[d] a cut of a goodly amount" of whatever dollar figure was obtained through the private bill effort. The following year she reiterated in an e-mail dated November 15, 2001, that "I assume that part of your payment should the bill pass [sic], would be for working to help push it through...I appreciate your pro bono work for the FOIA, but I believed that if the bill passed, you would be compensated for your work." Finally, Barbara Makuch again confirmed that Mr. Zaid was lawfully entitled to a percentage of any recovery. On April 19, 2002, she wrote in an e-mail that "[a]s far as I understand, it is the job of my attorney and me to get this bill through. That is why you will get your percentage."

10. Mr. Zaid was involved in every facet of the private bill effort expended on behalf of the Makuchs. As a result of Mr. Zaid's contributions, on or about October 27, 2000, Congressman Thomas M. Reynolds introduced H.R. 5598 and H.R. 5599. These private relief bills directed the Secretary of the Treasury to pay a specified sum, which was set at ONE MILLION DOLLARS ($1,000,000), to each of the Makuchs in compensation for the lifetime aggregate value of benefits earned but not received from their services with the FBI. The ONE MILLION DOLLAR ($1,000,000) amount listed in each of the private bills exceeded the usual amount permitted up to that date via private relief legislation, and was set at that amount solely due to the efforts Mr. Zaid expended on behalf of the Makuchs. Upon information and belief, were it not for Mr. Zaid's efforts, the private bills would either never have been introduced or would have been introduced for an amount approximating no greater than $500,000, but more likely around $250,000 each.

11. Although the Makuchs had agreed to compensate Mr. Zaid with one-third of any recovery they received through the passage of the private relief legislation, each of the bills contained a section limiting the payment of attorney's fees as follows: "Not more than 10 percent of the sum paid under section 1 shall be paid to or received by any agent or attorney for services rendered in connection with the recovery of such sum. Any person

who violates this section shall be fined under title 18, United States Code." This language was not included at the request, or with the consent, of the Makuchs or Mr. Zaid.

12. Both H.R. 5598 and H.R. 5599 were referred to the House Committee on the Judiciary and its Subcommittee on Immigration and Claims. No further action was taken on either bill as the term of the 106th Congress expired.

13. Following the convening of the 107th Congress in January 2001, on or about February 6, 2001, Congressman Reynolds re-introduced the two private bills, which were assigned H.R. 486 and H.R. 487 and then referred to the House Committee on the Judiciary.

14. During the period February 2001 through May 21, 2002, the bills proceeded through the respective stages within the House of Representatives. To help advance their legislation, the Makuchs made several trips to the District of Columbia to meet with Congressional staff and representatives, as well as Executive Branch officials. The Makuchs routinely and regularly made telephone calls, and sent and received e-mail and correspondence into the District of Columbia. At the same time, Mr. Zaid, as their agent, was instrumental in contributing to the passage of the two bills from the Subcommittee on Immigration and Claims, without which would have led to the ultimate demise of the pending legislation. Private relief bills rarely are enacted into law. Most, in fact, die at the Subcommittee level.

15. Upon information and belief, for example, during the 105th Congress, 34 private relief bills were introduced and referred to the Subcommittee on Immigration and Claims. Of these, only 6 were forwarded to the full Committee on Judiciary. Although each of these bills eventually passed the House of Representatives, only 1 was ultimately enacted into law. During the 106th Congress, 34 private relief bills were introduced and referred to the Subcommittee on Immigration and Claims. Of these, only 5 were forwarded to the full Committee on Judiciary. Although each of these bills eventually passed the House of

Representatives, only 3 were ultimately enacted into law. Thus, fewer than 20% of all introduced private bills pass from the Subcommittee and fewer than 10% were ultimately enacted into law.

16. During the period May 22, 2002, to September 18, 2002, the two private relief bills for the Makuchs were pending before the United States Senate. During this period as well, the Makuchs traveled to the District of Columbia for meetings, and routinely and regularly made telephone calls and sent and received e-mail and correspondence to/from the District of Columbia. Mr. Zaid, again as their agent, also significantly contributed to the efforts that led to the advancement of the bills during this time, primarily through regular communication with staff members and counsel within the United States Senate.

17. On or about September 18, 2002, the two bills were cleared for the White House. They were presented to the President on or about September 25, 2002, and signed into law on October 4, 2002. H.R. 486, which provided for relief of Barbara Makuch, became Private Law No: 107-3. H.R. 487, which provided for relief of Eugene Makuch, became Private Law No: 107-4. The enactment into law of the private bills entitled the Makuchs to payment of ONE MILLION DOLLARS ($1,000,000) each, or TWO MILLION DOLLARS ($2,000,000), collectively.

18. Pursuant to his agreement with the Makuchs, Mr. Zaid was entitled to receive one-third or SIX HUNDRED SIXTY-SIX THOUSAND AND SIX HUNDRED SIXTY-SIX DOLLARS ($666,666). However, due to the defendant United States Government's taking of Mr. Zaid's property, the private relief legislation interfered with his contractual agreement and limited him to ten percent or TWO HUNDRED THOUSAND DOLLARS ($200,000). Therefore, as a result, the defendant United States of American took twenty-three percent or FOUR HUNDRED SIXTY-SIX THOUSAND AND SIX HUNDRED SIXTY-SIX DOLLARS ($466,666) from Mr. Zaid.

19. Upon information and belief, on October 10, 2002, the Secretary of the Treasury, through a designated official, made an electronic transfer payment to the Makuchs of TWO MILLION DOLLARS ($2,000,000).

20. Mr. Zaid never recovered the FOUR HUNDRED SIXTY-SIX THOUSAND AND SIX HUNDRED SIXTY-SIX DOLLARS ($466,666) he was lawfully entitled to receive had the taking not occurred.

**FIRST CAUSE OF ACTION (FIFTH AMENDMENT TAKING)**

21. Mr. Zaid repeats and realleges the allegations contained in paragraphs 1 through 20 above, inclusive.

22. Mr. Zaid began representation of the Makuchs in or around June 1998 specifically to initiate efforts on their behalf to obtain compensation from the United States Government for recognition of the services they collectively performed as undercover agents for the FBI during the approximate period 1971-1992. Prior to the retention of Mr. Zaid, the Makuchs had tried unsuccessfully for years to obtain compensation. The Makuchs contractually agreed to provide Mr. Zaid with a 33% contingency recovery of any funds obtained from the United States Government.

23. On or about February 6, 2001, Congressman Reynolds introduced two private bills, which were assigned H.R. 486 and H.R. 487, to collectively provide the Makuchs with TWO MILLION DOLLARS ($2,000,000). Both bills contained a section limiting the payment of attorney's fees as follows: "Not more than 10 percent of the sum paid under section 1 shall be paid to or received by any agent or attorney for services rendered in connection with the recovery of such sum. Any person who violates this section shall be fined under title 18, United States Code." This language was not included at the request, or with the consent, of the Makuchs or Mr. Zaid.

24. On or about October 4, 2002. H.R. 486, which provided for relief of Barbara Makuch, became Private Law No: 107-3. H.R. 487, which provided for relief of Eugene

Makuch, became Private Law No: 107-4. The enactment into law of the private bills entitled the Makuchs to payment of ONE MILLION DOLLARS ($1,000,000) each, or TWO MILLION DOLLARS ($2,000,000), collectively.

25. Pursuant to his agreement with the Makuchs, Mr. Zaid was entitled to receive one-third or SIX HUNDRED SIXTY-SIX THOUSAND AND SIX HUNDRED SIXTY-SIX DOLLARS ($666,666).

26. On or about October 10, 2002, the Secretary of the Treasury, through a designated official, made an electronic transfer payment to the Makuchs of TWO MILLION DOLLARS ($2,000,000).

27. The defendant United States of America committed a taking under the Fifth Amendment of Mr. Zaid's property by reducing his percentage from one third to ten percent. As a result, the defendant United States of American took twenty-three percent or FOUR HUNDRED SIXTY-SIX THOUSAND AND SIX HUNDRED SIXTY-SIX DOLLARS ($466,666) from Mr. Zaid, an amount he was lawfully entitled to receive had the taking not occurred.

WHEREFORE, plaintiffs Mark S. Zaid, P.C/Mark S. Zaid, Esq., prays that this Court:

(1) award the plaintiffs the amount of FOUR HUNDRED SIXTY-SIX THOUSAND AND SIX HUNDRED SIXTY-SIX DOLLARS ($466,666), plus interest;

(2) grant such other relief as the Court may deem just and proper.

Date: January 10, 2008

Mark S. Zaid, Esq., *pro se*
Mark S. Zaid, PC
1250 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20036
(202) 454-2809
(202) 330-5610 fax
Mark@MarkZaid.com

Of Counsel: Eric H. Imperial
815 Connecticut Avenue, N.W.
Suite 220
Washington, DC 20006
(202) 457-1280
(202) 595-1986 fax
eric@imperiallaw.com