UNITED STATES COURT FOR FEDERAL CLAIMS

| | | |
|---|---|---|
| MARK S. ZAID, P.C. *et al.* | * | |
| | * | |
| Plaintiffs | * | No. 08-20 C |
| | * | Judge Thomas C. Wheeler |
| v. | * | |
| | * | |
| UNITED STATES OF AMERICA | * | |
| | * | |
| Defendant | * | |
| | * | |

* * * * * * * * * * * * *

**PROPOSED FINDINGS OF UNCONTROVERTED FACTS**
**IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Plaintiffs respectfully submit the following Proposed Finding of Uncontroverted Facts as to Which There is No Genuine Issue.

**Engagement and Representation**

1. In or about June 1998, Plaintiff Mark S. Zaid, Esq. (later incorporated as Mark S. Zaid, P.C.)(collectively "Zaid") was retained by Barbara and Eugene Makuch (collectively "Makuches") to initiate efforts on their behalf to obtain compensation from the United States Government in recognition of the services they performed as undercover agents for the Federal Bureau of Investigation ("FBI") during the approximate period 1971-1992. Declaration of Mark S. Zaid, Esq. at ¶3 (dated July 20, 2008)("Zaid Decl.").

2. On or about June 9, 1998, Zaid sent the Makuches a draft engagement letter outlining the basic terms of his representation. Id.

3. Because the Makuches had reservations about providing an upfront retainer payment and the specific amount of the contingency fee percentage that Zaid would be paid, Zaid and the Makuches agreed to continue discussing the contingency fee

percentage while Zaid worked to get the Makuches compensation. Apart from those two terms, the Makuches agreed to the terms in the engagement letter. The Makuches never signed the engagement letter. Id,

4. In or about 1999, the Makuches agreed that Zaid would receive one-third (33 1/3%) of any compensation that might be awarded to the Makuches. Id. at ¶4. Barbara Makuch, who spoke with Zaid on behalf of her and her husband and who told Zaid that they had agreed to the one-third contingency fee, confirmed that agreement in writing on numerous occasions. Id. The Makuches' agreement is memorialized in a series of e-mails to Zaid:

a. By e-mail dated December 8, 1999, Barbara Makuch informed Zaid that "I believe you have done a great deal to help me, but when I discussed this originally with you, you agreed to take it on without a retainer, but with the understanding that if you won, you would agree to take a third. I have those papers somewhere. I appreciate all you have done, so don't think that I am giving you a tough time. I am not in the market for revenge but for fairness." Id. at ¶5, Exhibit 2.[1]

b. On August 23, 2000, Barbara Makuch again confirmed via e-mail that if Zaid was successful in his efforts to obtain compensation for the Makuchs "then the 1/3 agreement holds, and I would be happy to see you on the receiving end of that." Id. at ¶6, Exhibit 3.

[1] Copies of various e-mails are being submitted for evidentiary proof that the Makuches agreed to a contingency agreement of 33 1/3%. These e-mails have been redacted in order to ensure Zaid's compliance with Rule 1.6(e)(5) of the D.C. Code of Professional Conduct.

c. As the time approached for the private bills to be introduced into the House of Representatives, on September 22, 2000, Barbara Makuch reiterated through e-mail that "We also have to take into account your third. Either they pay it outright or it comes out of our 2.? million, so we need to factor that in." Id. at ¶7, Exhibit 4.

d. Also on September 22, 2000, Barbara Makuch assured Zaid in an e-mail that she believed he "deserve[d] a cut of a goodly amount" of whatever dollar figure was obtained through the private bill effort. Id. at ¶8, Exhibit 5.

e. In an e-mail dated November 15, 2001, Barbara Makuch wrote "I assume that part of your payment should the bill pass [sic], would be for working to help push it through...I appreciate your pro bono work for the FOIA, but I believed that if the bill passed, you would be compensated for your work." Id. at ¶9, Exhibit 6.

f. Just months before compensation was successfully obtained, Barbara Makuch reiterated in another e-mail on April 19, 2002, that "[a]s far as I understand, it is the job of my attorney and me to get this bill through. That is why you will get your percentage." Id. at ¶10, Exhibit 7.

**Enactment of Private Relief Bills.**

5. Zaid worked for approximately four years to get the Makuches compensation for their services that included the passage of the private relief bills. During this time, Zaid worked with numerous staff members for Members of Congress and representatives of the FBI to secure introduction and passage of the two private relief bills. Id. at ¶11.

6. On or about October 27, 2000, Congressman Thomas M. Reynolds introduced H.R. 5598 and H.R. 5599, private relief bills directing the Secretary of the Treasury to pay a specified sum, which was set at one million dollars ($1,000,000), to both Barbara

and Eugene Makuch, respectively. Both bills were referred to the House Committee on the Judiciary and its Subcommittee on Immigration and Claims. No further action was taken on either bill before the term of the 106th Congress expired. Id. at ¶12. (The history of the private relief bills can be found at *http://www.govtrack.us/congress/bill.xpd?bill=h107-486* and *http://www.govtrack.us/congress/bill.xpd?bill=h107-487#votes.*)

7. Following the convening of the 107th Congress in January 2001, on or about February 6, 2001, Congressman Reynolds re-introduced the two private bills, which were assigned H.R. 486 and H.R. 487, and they were referred to the House Committee on the Judiciary. Id. at ¶13.

8. During the period February 2001 through September 18, 2002, the two private relief bills for the Makuchs proceeded through the legislative stages in the United States House of Representatives and the United States Senate. Mr. Zaid continued to be engaged in the process, monitoring the progress of the bills for the Makuches. Id. at ¶14.

9. On or about September 18, 2002, the two bills were cleared for the White House. They were presented to the President on or about September 25, 2002, and signed into law on October 4, 2002. H.R. 486, which provided for relief of Barbara Makuch, became Private Law No: 107-3., and H.R. 487, which provided for relief of Eugene Makuch, became Private Law No: 107-4. The enactment into law of the private bills entitled the Makuchs to payment of one million dollars ($1,000,000) each, or two million dollars ($2,000,000), collectively. Id. at ¶15, Exhibits 8 and 9.

10. Each bill contained a section limiting the payment of attorney's fees as follows: "Not more than 10 percent of the sum paid under section 1 shall be paid to or received by

any agent or attorney for services rendered in connection with the recovery of such sum. Any person who violates this section shall be fined under title 18, United States Code." Neither Mr. Zaid nor the Makuches requested or consented to this provision. Id. at ¶17.

11. In a September 5, 2001 letter from Assistant Attorney General Daniel Bryan to Congressman George Gekas, then Chairman of the Subcommittee on Immigration and Claims, the DOJ expressed concern that the limitation provision could result in a compensable taking under the Fifth Amendment. Id. at ¶18, Exhibit 10.

12. On or about October 10, 2002, the Secretary of the Treasury, through a designated official, made an electronic transfer payment to the Makuchs of two million dollars ($2,000,000). Id. at ¶16.

13. Zaid received payment of one hundred thousand dollars ($100,000) from the Makuchs as part of a settlement in *Mark S. Zaid, P.C. v. Barbara Makuch et al.*, Civil Action No. 02-2036 (D.D.C.)(ESH). Zaid Decl. ¶ 19.

Dated: July 20, 2008

Respectfully submitted,

s/ Eric H. Imperial

Eric H. Imperial (D.C. Bar #427139)
815 Connecticut Avenue, N.W.; Ste. 220
Washington, DC 20006
(202) 457-1280
(202) 595-1986 (fax)
eric@imperiallaw.com

*Attorney For Plaintiffs*