UNITED STATES COURT FOR FEDERAL CLAIMS

| | | |
|---|---|---|
| MARK S. ZAID, P.C. *et al.* | * | |
| | * | |
| Plaintiffs | * | No. 08-20 C |
| | * | Judge Thomas C. Wheeler |
| v. | * | |
| | * | |
| UNITED STATES OF AMERICA | * | |
| | * | |
| Defendant | * | |
| | * | |

* * * * * * * * * * * * *

**DECLARATION OF MARK S. ZAID, ESQ.**

I, MARK S. ZAID, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am a person over eighteen (18) years of age and competent to testify. I make this Declaration on personal knowledge and in support of the plaintiffs' Opposition to Defendant's Motion to Dismiss and Cross-Motion for Summary Judgment.

2. I am the plaintiff in this action, both in my individual capacity and as the President of Mark S. Zaid, P.C. I am admitted to practice law in the States of New York, Connecticut, Maryland and the District of Columbia, as well as the D.C. Circuit, Second Circuit and Fourth Circuit Court of Appeals, and the United States District Courts for the District of Columbia, Maryland, Eastern District of New York, Northern District of New York, Southern District of New York and this Court.

3. I was retained by Barbara and Eugene Makuch in or around June 1998 to help them obtain compensation from the United States Government for recognition of the services they collectively performed as undercover agents for the Federal Bureau of Investigation ("FBI") during the approximate period 1971-1992. At the time I first began my representation I was acting as a sole proprietor. Several months later I incorporated and my law firm continued the representation. On our about June 9, 1998, I sent a copy

an engagement letter to the Makuches outlining the terms of my representation. Because the Makuches and I had not yet agreed on the specific percentage of my contingency fee, I agreed to leave that term blank for further discussion. With the exception of the percentage of the contingency fee and whether an upfront retainer payment would be made, the Makuches agreed to the remaining terms of the engagement letter. We agreed to continue talking about the contingency fee as I worked on their case. The Makuches never signed the engagement letter. Attached as Exhibit 1 is a true and correct copy of the June 9, 1998 engagement letter.

4. During the course of my representation the Makuches and I had further discussions about the percentage of the contingency fee. Most of these discussions were with Barbara Makuch who spoke for both herself and her husband. On numerous occasions the Makuches confirmed that we had agreed that I would receive one-third (33 1/3%) of any total amount that they received from the Government. Over the course of almost three years, Ms. Makuch confirmed our agreement in a series of e-mails to me.

5. Attached as Exhibit 2 is a true and correct copy of an e-mail dated December 8, 1999, wherein Ms. Makuch stated that "I believe you have done a great deal to help me, but when I discussed this originally with you, you agreed to take it on without a retainer, but with the understanding that if you won, you would agree to take a third. I have those papers somewhere. I appreciate all you have done, so don't think that I am giving you a tough time. I am not in the market for revenge but for fairness."[1]

[1] Copies of various e-mails are being submitted for evidentiary proof that the Makuches agreed to a contingency agreement of 33 1/3%. These e-mails have been redacted in order to ensure my compliance with Rule 1.6(e)(5) of the D.C. Code of Professional Conduct.

6. Attached as Exhibit 3 is a true and correct copy of an e-mail dated August 23, 2000, wherein Ms. Makuch again confirmed that if we were successful in obtaining compensation for the Makuches "then the 1/3 agreement holds, and I would be happy to see you on the receiving end of that."

7. Attached as Exhibit 4 is a true and correct copy of an e-mail dated September 22, 2000, wherein Ms. Makuch reiterated that "We also have to take into account your third. Either they pay it outright or it comes out of our 2.? million, so we need to factor that in."

8. Attached as Exhibit 5 is a true and correct copy of an e-mail dated September 22, 2000, wherein Ms. Makuch assured me that she believed I "deserve[d] a cut of a goodly amount" of whatever dollar figure was obtained through the private bill effort.

9. Attached as Exhibit 6 is a true and correct copy of an e-mail dated November 15, 2001, wherein Ms. Makuch wrote, "I assume that part of your payment should the bill pass [sic], would be for working to help push it through...I appreciate your pro bono work for the FOIA, but I believed that if the bill passed, you would be compensated for your work."

10. Attached as Exhibit 7 is a true and correct copy of an e-mail dated April 19, 2002, and stated that "[a]s far as I understand, it is the job of my attorney and me to get this bill through. That is why you will get your percentage."

11. It was my legal opinion that a lawsuit to secure compensation would not succeed. In order to obtain important background information I initially handled on the Makuches' behalf a pro bono lawsuit pursuant to the Freedom of Information Act ("FOIA"). Makuch et al. v. FBI et al., Civil Action No. 99-1094 (D.D.C.)(RMU). I also undertook public relations activities to enhance their profile and develop sympathy for their compensation

efforts. It was thereafter determined that the best course of action to obtain compensation would be through private relief legislation, which I had prior experience in handling. For a period of over four years, I worked to get the Makuches compensation for their services that included working with numerous staff members for Members of Congress and representatives of the FBI to secure introduction and passage of the two private relief bills.

12. As a direct result of my efforts, on or about October 27, 2000, Congressman Thomas M. Reynolds introduced H.R. 5598 and H.R. 5599. These private relief bills directed the Secretary of the Treasury to pay a specified sum, which was set at one million dollars ($1,000,000), to Barbara and Eugene Makuch, respectively. Both H.R. 5598 and H.R. 5599 were referred to the House Committee on the Judiciary and its Subcommittee on Immigration and Claims. No further action was taken on either bill before the term of the 106th Congress expired.

13. Following the convening of the 107th Congress in January 2001, on or about February 6, 2001, Congressman Reynolds re-introduced the two private bills, which were assigned H.R. 486 and H.R. 487, and then referred to the House Committee on the Judiciary.

14. During the approximate period February 2001 through September 18, 2002, the bills proceeded through the legislative stages in the House of Representatives and the Senate. I remained engaged in the process during this period of time.

15. On or about September 18, 2002, the two bills were cleared for the White House. They were presented to the President on or about September 25, 2002, and signed into law on October 4, 2002. H.R. 486, providing relief of Barbara Makuch, became Private

Law No: 107-3. H.R. 487, providing relief of Eugene Makuch, became Private Law No: 107-4. The enactment into law of the private bills entitled the Makuchs to payment of one million dollars ($1,000,000) each, or two million dollars ($2,000,000), collectively. Attached as Exhibits 8 and 9 are true and correct copies of these private laws.

16. I was informed that on or about October 10, 2002, the Secretary of the Treasury, through a designated official, made an electronic transfer payment to the Makuchs of two million dollars ($2,000,000).

17. Each law contained a section limiting the payment of attorney's fees as follows: "Not more than 10 percent of the sum paid under section 1 shall be paid to or received by any agent or attorney for services rendered in connection with the recovery of such sum. Any person who violates this section shall be fined under title 18, United States Code." Thus, I was restricted by law from receiving more than $200,000 from the Makuches in fulfillment of the existing contractual contingency agreement. Neither I nor the Makuches requested or consented to this provision.

18. Attached as Exhibit 10 is a true and correct copy of a September 5, 2001 letter from Assistant Attorney General Daniel Bryan to Congressman George Gekas regarding the payment limitation provision.

19. The Makuchs refused to abide by their contract with me and refused to pay even the ten percent allowed by the private relief law, and I was forced to file a lawsuit for breach of contract among other claims. *See Mark S. Zaid, P.C. v. Barbara Makuch et al.*, Civil Action No. 02-2036 (D.D.C.)(ESH). I ultimately received payment of one-hundred thousand dollars ($100,000) from the Makuchs as part of a settlement.

I do solemnly affirm under the penalties of perjury and upon personal knowledge that the contents of the foregoing paper are true to the best of my knowledge.

Date: July 20, 2008

Mark S. Zaid

June 9, 1998

Barbara & Eugene Makuch
143 Brenridge Drive
East Amherst, New York 14051

Dear Barbara and Eugene:

Pursuant to our discussions, this letter memorializes the terms regarding my representation of your interests.

1. I will represent you in all negotiations related to your efforts to obtain compensation from the United States Government in recognition of your services as undercover agents for the Federal Bureau of Investigation. My representation shall not include the initiation of litigation unless additional terms are negotiated.

2. My usual fee is $200/hour. However, in your case my fee structure will be as follows: I will be paid an initial retainer of $$$$ and will be entitled to %%% of any monies collected. I shall make all possible efforts to have the government cover my attorney's fees. Finally, you shall also be responsible for payment of all reasonable expenses incurred during the representation. In light of your present financial situation, a reasonable payment schedule will be arranged.

3. Reasonable expenses includes, but is not limited to, photocopying, facsimiles, postage, taxis and telephone calls. I will strive to keep expenses to a minimum. Generally, I will submit my bill each 30 to 60 day period and invoices will be payable within 30 days thereafter. I may, however, allow expenses to accumulate and obtain reimbursement at a later time.

4. Should attorneys fees be awarded as a result of a settlement, I agree to first reimburse you for all monies paid to me pursuing a remedy. Any additional fees shall be retained by me.

5. This Agreement is effective immediately.

**Exhibit 1**
**Declaration Mark S. Zaid**

If these terms are acceptable to you, please sign below and return one copy to me. The second copy is for your files. Should you have any questions or wish to discuss this matter further, please do not hesitate to contact me.

I look forward to representing you on this matter and to our success.

Sincerely,

Mark S. Zaid

______________________________
Barbara Makuch

______________________________
Eugene Makuch

______________________________
Date

______________________________
Date

Subj: **Re: Settlement Agreement**
Date: 12/8/99 7:47:24 PM Eastern Standard Time
From: MartaH007
To: ZaidMS

In a message dated 12/7/99 8:50:21 PM Eastern Standard Time, ZaidMS writes:

[redacted] Mark, I believe you have done a great deal to help me, but when I discussed this originally with you, you agreed to take it on without a retainer, but with the understanding that if you won, you would agree to take a third. I have those papers somewhere. I appreciate all you have done, so don't think that I am giving you a tough time. I am not in the market for revenge but for fairness. [redacted]

>
>
>

[redacted]

Regards
B



Exhibit 2
Declaration Mark S. Zaid

Subj: **Re: Check out National Security Archive vs. the CIA (washingtonpost.com)**
Date: 8/23/2000 1:59:29 PM Eastern Daylight Time
From: MartaH007
To: ZaidMS

In a message dated 8/23/2000 11:36:55 AM Eastern Daylight Time, ZaidMS writes:

[redacted] In addition, I would hope that they would respond to just a letter, simply because my gut feeling is that they are in a quandary as to what to do, and if they decide to do the right thing based on your correspondence, then the 1/3 agreement holds, and I would be happy to see you on the receiving end of that. I think I would rather see you do the letter first, before we take it any further. I want you to have the benefit of the win. [redacted]

Love B



**Exhibit 3**
**Declaration of Mark S. Zaid**

Subj: **Re: Financial Situation**
Date: 9/22/2000 2:15:49 AM Eastern Daylight Time
From: MartaH007
To: ZaidMS

[redacted] We need to realize at least 1.8 million net in order to invest the funds, keeping up with inflation to pay for our medical insurance and [redacted] we also have to take into account your third. Either they pay it outright or it comes out of our 2.? million, so we need to factor that in. [redacted]

Love B



**Exhibit 4**
**Declaration of Mark S. Zaid**

Subj: **Re: Financial Situation**
Date: 9/22/2000 2:49:48 AM Eastern Daylight Time
From: MartaH007
To: ZaidMS

In a message dated 9/22/2000 2:26:04 AM Eastern Daylight Time, ZaidMS writes:

[redacted]

[redacted]

[redacted]

[redacted] Go for two-point something, pointing out that we are screwed totally since know we can't find a decent wage, have no retirement anything, [redacted]n any event, I know you will do what you can. Just go for it. I also think you deserve a cut of a goodly amount. Our friend figures we could live on the proceeds of about 1.6 million dollars if they were conservatively invested, [redacted]



**Exhibit 5**
**Declaration of Mark S. Zaid**

[redacted]

Love,
B

Subj: **Re: (no subject)**
Date: 11/15/01 2:01:21 AM Eastern Standard Time
From: MartaH007
To: ZaidMS

In a message dated 11/14/2001 11:53:07 PM Eastern Standard Time, ZaidMS writes:

> [redacted]

[redacted] However, when the bill passes, you are entitled to a portion of that bill, as I understand it. Which is why I assumed, perhaps wrongly, that you would help us with the passage of the bill. [redacted] I assume that part of your payment should the bill pass, would be for working to help push it through. [redacted] I appreciate your pro bono work for the FOIA, but I believed that if the bill passed, you would be compensated for your work. [redacted]

Barbara



**Exhibit 6**
**Declaration of Mark S. Zaid**

Subj: **Re: Today**
Date: 4/19/02 4:50:18 PM Eastern Daylight Time
From: MartaH007
To: ZaidMS

In a message dated 4/19/2002 3:30:30 PM Eastern Daylight Time, ZaidMS writes:

[redacted]

As far as I understand, it is the job of my attorney and me to get this bill through. That is why you will get your percentage. [redacted] How far do you think that money will stretch after you get your percentage, and the taxes are paid?

[redacted]

Barbara and Eugene



Exhibit 7
Declaration of Mark S. Zaid

Private Law 107–3
107th Congress

# An Act

For the relief of Barbara Makuch.

Oct. 4, 2002
[H.R. 486]

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled*,

**SECTION 1. PAYMENT.**

In consideration of the fact that Barbara Makuch—

(1) served 22 years as a foreign counterintelligence agent and dedicated her life to assist the Federal Bureau of Investigation in its efforts at the height of the Cold War to combat communism, the Komitet Gosudarstvennoy Bezopasnosti (KGB), and the Soviet Union,

(2) was presented the Louis E. Peters Memorial Service Award, the highest civilian award presented by the Federal Bureau of Investigation, for her valorous service, and

(3) has not received employment assistance or health, social security, or pension benefits, despite assurances that she would receive such benefits upon her retirement,

the Secretary of the Treasury shall pay, out of funds not otherwise appropriated, the sum of $1,000,000 to Barbara Makuch of East Amherst, New York, in compensation for the lifetime aggregate value of benefits earned but not received by Barbara Makuch.

**SEC. 2. SATISFACTION OF CLAIM.**

The sum paid under section 1 shall be in full satisfaction of any claims that Barbara Makuch may have against the United States arising out of her service for the Federal Bureau of Investigation.

**SEC. 3. LIMITATION ON ATTORNEY FEES.**

Not more than 10 percent of the sum paid under section 1 shall be paid to or received by any agent or attorney for services rendered in connection with the recovery of such sum. Any person who violates this section shall be fined under title 18, United States Code.

**Exhibit 8**
**Declaration of Mark S. Zaid**

Private Law 107–4
107th Congress

# An Act

For the relief of Eugene Makuch.

Oct. 4, 2002
[H.R. 487]

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled*,

**SECTION 1. PAYMENT.**

In consideration of the fact that Eugene Makuch—

(1) served as a foreign counterintelligence agent and dedicated his life to assist the Federal Bureau of Investigation in its efforts at the height of the Cold War to combat communism, the Komitet Gosudarstvennoy Bezopasnosti (KGB), and the Soviet Union, and

(2) has not received employment assistance or health, social security, or pension benefits, despite assurances that he would receive such benefits upon his retirement,

the Secretary of the Treasury shall pay, out of funds not otherwise appropriated, the sum of $1,000,000 to Eugene Makuch of East Amherst, New York, in compensation for the lifetime aggregate value of benefits earned but not received by Eugene Makuch.

**SEC. 2. SATISFACTION OF CLAIM.**

The sum paid under section 1 shall be in full satisfaction of any claims that Eugene Makuch may have against the United States arising out of his service for the Federal Bureau of Investigation.

**SEC. 3. LIMITATION ON ATTORNEY FEES.**

Not more than 10 percent of the sum paid under section 1 shall be paid to or received by any agent or attorney for services rendered in connection with the recovery of such sum. Any person who violates this section shall be fined under title 18, United States Code.

**Exhibit 9**
**Declaration of Mark S. Zaid**

U.S. Department of Justice

Office of Legislative Affairs

(20)

Washington, D.C. 20530

September 5, 2001

The Honorable George W. Gekas
Chairman
Subcommittee on Immigration
and Claims
Committee on the Judiciary
U.S. House of Representatives
Washington, D.C. 20515

Dear Mr. Chairman:

This letter responds to your letter to the Attorney General requesting views on H.R. 486 and H.R. 487, private relief bills for Eugene and Barbara Makuch pending before your Subcommittee. The Department of Justice does not oppose either bill.

For over 20 years Barbara Makuch provided significant assistance to the Federal Bureau of Investigation. With her husband, she provided critical information that allowed the FBI to offset espionage activities planned by the Soviet Union against the United States and our allies. Without doubt, their long term assistance and service demonstrated an admirable commitment to safeguarding the security of our Nation.

It was for this service and sacrifice that the FBI honored Mrs. Makuch in 1992 with the Louis E. Peters Memorial Service Award. In addition, over the years the FBI has provided funds to the Makuch's for their services and expenses and when their service was complete, the FBI made a significant "one-time" payment to help them during their transition phase.

We note that if either or both of the Makuches has a contract with an agent or attorney that entitles the agent or attorney to a fee greater than 10 percent of the award amount, an attempt by Congress to deprive such an agent or attorney of the full fee might constitute a "taking" of private property for which compensation would be due under the Fifth Amendment. *See Connolly v. Pension Benefit Guaranty Corp.*, 475 U.S. 211, 224 (1986) (contractual rights may be property that the government cannot take without "just compensation"). "The inquiry into

Exhibit 10
Declaration of Mark S. Zaid

12837

whether a taking has occurred is essentially an 'ad hoc, factual inquiry.'" *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1005 (1984). Because we do not know whether such a contract even exists, we cannot determine whether section 3 of both bills would effect a compensable taking. Nonetheless, if these sections do result in a taking, the Makuches' agent or attorney would be able to pursue a remedy through the Tucker Act, 28 U.S.C. Section 491. The courts presume that a Tucker Act remedy is available unless Congress specifically forbids this method of recourse. *See Ruckelshaus*, 467 U.S. at 1018-19. Because the bill does not mention the Tucker Act, we would construe this remedy to remain available.

Thank you for this opportunity to present the Department's views. Please do not hesitate to call upon us if we may be of additional assistance. The Office of Management has advised us that from their perspective of the Administration's program, there is no objection to the submission of this letter.

Sincerely,

Daniel J. Bryant
Assistant Attorney General

cc: The Honorable Sheila Jackson Lee
Ranking Minority Member

The Honorable Thomas Reynolds



CC0833

Exhibit 10
Declaration of Mark S. Zaid